UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MERCHANTS BONDING COMPANY
(MUTUAL) and MERCHANTS
NATIONAL BONDING, INC.,                    Case No. 22-CV-2925 (PJS/DTS)

            Plaintiffs/Counter-Defendants,

v.                                                          ORDER

VANN COMPANIES, LLC, and MICHAEL
VANN,

            Defendants/Counter-Claimants.

---

Lucas Clayton and Mark R. Becker, FABYANSKE, WESTRA, HART &
THOMSON, PA, for plaintiffs/counter-defendants.

Jared M. Reams, Anne St. Amant, and Mark J. Blando, ECKLAND &
BLANDO LLP, for defendants/counter-claimants.

Plaintiffs Merchants Bonding Company (Mutual) and Merchants National

Bonding, Inc. (collectively, "Merchants") are sureties.  Defendant Vann Companies,

LLC is a construction and demolition company wholly owned by defendant Michael

Vann (collectively, "Vann").  In 2020, Vann was awarded a contract by the National

Park Service ("NPS") to rebuild the bathhouses on Nauset Light Beach in Cape Cod,

Massachusetts (the "Project"), and Merchants issued performance and payment bonds

on Vann's behalf.

In December 2021, NPS terminated Vann's contract after declaring Vann in default, and Merchants engaged a replacement contractor to complete the Project. Merchants then demanded that Vann post collateral in accordance with the parties' Indemnity Agreement. Vann refused to comply with Merchants' demand, so Merchants filed this lawsuit. The matter is now before the Court on Merchants' motion for a preliminary injunction.

## I. BACKGROUND

On September 24, 2020, Vann was awarded a contract by NPS to rebuild the bathhouses on Nauset Light Beach in Cape Cod, Massachusetts. Vann Decl. ¶ 3 [ECF No. 26]. Vann retained Merchants as its surety for the Project, and Merchants issued performance and payment bonds. *Id.* ¶ 4. In addition, Merchants and Vann entered into an Indemnity Agreement under which Vann agreed to indemnify Merchants for any loss or liability that Merchants incurred under the bonds and to post collateral upon Merchants' demand. Vann specifically agreed that it would accept an affidavit from Merchants as prima facie evidence of any liability that Vann owed to Merchants under the Indemnity Agreement:

> [Vann] shall unconditionally indemnify and keep
> indemnified [Merchants] against any and all liability, loss
> and expense of whatsoever kind or nature . . . which
> [Merchants] may sustain or incur [related to the bonds].
> [Vann] agree[s] to furnish money to . . . [Merchants] as
> needed for the prompt payment of labor and materials used

in performance of contracts guaranteed by a Bond when and
as requested to do so by [Merchants].  [Merchants] shall
have the exclusive right for itself and for [Vann] to decide
and determine whether any claim, demand, suit, or
judgment shall, on the basis of liability, expediency or
otherwise, be paid, settled, defended or appealed, and
[Merchants'] determination shall be final, conclusive and
binding upon [Vann].  Vouchers, affidavits or other evidence
of payment by [Merchants] of any loss, cost or expense shall
be prima facie evidence of their propriety and the liability of
[Vann] to [Merchants] for such loss, cost or expense. . . .

Immediately upon demand [Vann] will deposit with
[Merchants], as collateral security, money or other collateral
satisfactory to [Merchants], equal to (1) the liability of
[Merchants], if established; (2) the liability asserted against
[Merchants]; or (3) the reserve established by [Merchants], or
any increase thereof, to cover any liability for any loss or
expense for which [Vann] may be obligated to indemnify
[Merchants] under the terms of this Agreement.

Compl. Ex. A ¶¶ SECOND, FOURTEENTH [ECF No. 1-1].

Vann began work on the Project in November 2020.  Vann Decl. ¶ 6.  Following a

"multitude of difficulties and delays," NPS declared Vann in default and terminated the

contract on December 17, 2021.  *Id.* ¶ 7.  As surety for Vann, Merchants then stepped in

to complete the unfinished work.  Merchants informed Vann that it had taken

possession of the Project site and that Vann should remove its trucks and equipment

from the site as soon as possible.  Ex. A to Vann Decl.

In a letter dated April 8, 2022, Merchants demanded that Vann "collateralize it

with $3,114,779.75 in cash or an irrevocable letter of credit in favor of Merchants" for

liability that Merchants had incurred related to Vann's bonds.  Ex. D to Compl.  Vann responded by letter dated May 5, 2022.  In that response, Vann disputed Merchants' interpretation of the Indemnity Agreement, objected to the amount of collateralization demanded by Merchants, and complained about Merchants' actions following NPS's termination of Vann's contract.  Ex. E to Compl.  Vann also informed Merchants of its intent to challenge NPS's termination of Vann's contract.

On November 17, 2022, Merchants filed this lawsuit against Vann, seeking specific performance of the parties' Indemnity Agreement.  *See* Compl. [ECF No. 1]. Merchants then moved for a preliminary injunction compelling Vann to post collateral in the amount of $3,114,779.75.[1]  ECF No. 8.  For the reasons that follow, the Court grants the motion.

---

[1]Merchants' motion also asks the Court to compel Vann "to perform [its] specific obligations to indemnify or exonerate Merchants under the Bonds."  ECF No. 8 at 1.  But Merchants' briefs suggest—and Merchants' counsel confirmed at oral argument—that Merchants only seeks to enforce Vann's collateralization obligation at this time.  *See, e.g.*, Def. Reply at 3 [ECF No. 38] ("Merchants' Motion does not ask the Court to enter final judgment on Defendants' ultimate indemnity obligation at this time.  Rather, Merchants merely seeks to have the Court enforce Defendants' agreed upon contractual obligation to provide collateral sufficient to cover any losses it has or will suffer related to claims on the Bonds.").

II.  ANALYSIS

The Eighth Circuit has instructed district courts to consider four factors when deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest.  *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  Each of these factors weighs in Merchants' favor.

*A.  Likelihood of Success*

As noted, Merchants seeks a preliminary injunction to force Vann to comply with its collateralization obligation under the Indemnity Agreement.  Vann does not dispute that it owes a duty to collateralize Merchants.  Instead, Vann argues that Merchants is unlikely to succeed on the merits of its collateralization claim because it has failed to produce sufficient evidence supporting the *amount* of the collateral it has demanded.

On May 13, 2022, Merchants provided Vann with a sworn affidavit from its claims attorney that set forth the liability Merchants had already incurred and anticipated incurring on Vann's failed projects.[2]  *See* Blando Decl. Ex. A [ECF No. 27-1].

---

[2]While the bonds related to the Nauset Project are the primary focus of this lawsuit, Merchants also acted as a surety for Vann in connection with another project in Shenandoah, Virginia.  *See* Compl. ¶ 16.

-5-

According to Vann, this affidavit is not sufficient to trigger an obligation to post collateral in the amount demanded. *See* Pl. Memo. Opp. Mot. Prelim. Inj. ("Pl. Memo.") at 21 [ECF No. 30] ("The evidence supporting [Merchants'] numbers is at worst intentionally thin and at best too little and unreliable to give confidence of their ability to succeed on the merits."). But Vann ignores the language of the Indemnity Agreement, which explicitly provides that:

> [Merchants] shall have the exclusive right for itself and for [Vann] to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and [Merchants'] determination shall be final, conclusive and binding upon [Vann]. *Vouchers, affidavits or other evidence of payment by [Merchants] of any loss, cost or expense shall be prima facie evidence of their propriety and the liability of [Vann] to [Merchants] for such loss, cost or expense.*

Compl. Ex. A ¶ SECOND (emphasis added).

When asked about this provision at oral argument, Vann's counsel suggested that despite its seemingly straightforward language, the provision could not *really* mean that an affidavit from Merchants, standing alone, is sufficient to establish the amount of Vann's collateralization obligation. Vann's counsel argued that, if an affidavit were enough to support a demand for collateral, nothing would prevent Merchants from submitting an affidavit demanding an outrageous sum—say, one billion dollars.

The Court need not address Vann's hypothetical, because Merchants' demand is
not outrageous and there is no reason to believe that Merchants is attempting to
defraud Vann.  To the contrary, as the Court explained at the hearing, the sum
demanded by Merchants is well within the realm of plausibility for what may be
needed to cover its obligations on the bonded projects.  Moreover, Merchants'
representative signed the May 13 affidavit under penalty of perjury,[3] *see* Blando Decl.
Ex. A, and Vann offers little to contradict the amounts set forth in the affidavit.  There is
simply no reason for the Court to refuse to enforce the plain language of the Indemnity
Agreement.  *Cf. U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 582 (M.D. Pa. 1998),
*aff'd*, 185 F.3d 864 (3d Cir. 1999) ("Interpreting identical *prima facie* evidence clauses,
courts have routinely held that once a surety has submitted the required documentation
of payments, . . . the principal [must] prove the existence of a genuine issue of material
fact for trial.").

As the Court explained at oral argument, it makes sense that the parties would
have agreed that an affidavit from Merchants—rather than a detailed itemized
accounting—would be sufficient to trigger Vann's obligation to provide collateral.  The
purpose of Vann's collateralization obligation is merely to eliminate Merchants'

---

[3]Merchants' representative also verified the complaint, which sets forth
Merchants' past and anticipated losses related to the bonded projects, under penalty of
perjury.  *See* Compl. at 14.

-7-

exposure while claims against the bond are being resolved.  *See Int'l Fid. Ins. Co. v. Anchor Env't, Inc.*, Civ. Action No. 07-04750, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008) ("If Plaintiff is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect."). Any sum that Vann provides as collateral and that ultimately proves unnecessary to cover Merchants' liabilities on the bonds will be refunded to Vann.  *See* Compl. Ex. A ¶ FOURTEENTH ("[Vann] shall be entitled to the refund of any unused portion of the collateral upon termination of the liability of [Merchants] on all Bonds and the performance by [Vann] of all obligations to [Merchants] under the terms of this Agreement."); *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (explaining collateral-security provision in indemnity contract).  There is no reason for the parties to invest significant time and resources trying to determine the amount of the collateral that Vann must temporarily provide when they have the ability to fully litigate the amount of indemnity that Vann will actually owe.  *Cf. First Nat. Ins. Co. of Am. v. Sappah Bros. Inc.*, 771 F. Supp. 2d 569, 574 (E.D.N.C. 2011) (finding that dispute about whether liability was properly incurred by surety "is irrelevant to whether defendants are required to post collateral security preliminarily").

In short, the Court finds that Merchants is likely to succeed on the merits of its collateralization claims because there is no dispute that Vann agreed to collateralize

Merchants and to accept the affidavit provided by Merchants as prima facie evidence of the amount of collateral that Vann must provide.

### B.  Irreparable Harm

Merchants has also shown that it will suffer irreparable harm if the Court does not issue a preliminary injunction.  In general, "[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  At first glance, it may seem that the harm that Merchants will suffer if Vann does not provide collateral will be compensable through money damages.  If Vann does not post collateral but later indemnifies Merchants, then Merchants will not have been harmed.  And if Vann does not post collateral and later fails to indemnify Merchants, the injury to Merchants will be financial, and money damages will make Merchants whole.  That, at least, is Vann's argument.

The problem with Vann's argument is that there is more at stake than Vann suggests.  Under the collateralization provision, Merchants received a promise from Vann that during the time period in which claims against the bonds are being resolved, Merchants would be *collateralized*—that is, Merchants could go about its business confident that, no matter how the claims were ultimately resolved and no matter what financial challenges Vann might experience in the interim, Merchants would not suffer

a financial loss.  In essence, Merchants bargained for peace of mind.  As one court

explained, a surety in the position of Merchants has the right "to the immediate,

contracted-for payment of collateral to eliminate the surety's *potential exposure* for a risk

of loss." *Merchants Bonding Co. (Mut.) v. Ark. Constr. Sols., LLC*, No. 5:18-CV-05078, 2019

WL 452767, at *3 (W.D. Ark. Feb. 5, 2019) (emphasis in original).

> The risk of loss to a surety who is a party to an indemnity
> agreement—as opposed to some other kind of agreement—is
> unique.  This is because the indemnitor specifically promises
> to indemnify the surety from any future loss, even
> temporary loss, associated with a bond, through the
> payment of collateral upon demand.  It follows that it would
> not make Merchants whole to order Defendants to pay a
> money judgment at the end of this litigation.  This is
> because, at that point, Merchants would have lost its
> contractual right to the immediate payment of
> collateral—which is a form of specific relief that only a
> preliminary injunction can provide.  Without such relief,
> Merchants would simply be required "to suffer any loss,
> even if only temporary, associated with the performance of a
> primary obligor's duty."

*Id.* at *4 (quoting *Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04 C 3963, 2004 WL 1794915,

at *6 (N.D. Ill. Aug. 6, 2004)).

The majority of courts that have addressed the issue have agreed that, in light of

the unique nature of a collateralization agreement, a court should compel its specific

performance through a preliminary injunction.  *See, e.g.*, *Safeco*, 739 F.2d at 433 ("If a

creditor is to have the security position for which he bargained, the promise to maintain

the security must be specifically enforced." (quoting *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683–84 (S.D.N.Y. 1939))); *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014) ("[T]he surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." (quotations omitted)); *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1321 (S.D. Fla. 2008) ("[A] surety's loss of its right to collateralization cannot be adequately remedied through monetary damages."); *Sappah Bros.*, 771 F. Supp. 2d at 574 (same).

This Court agrees with the weight of authority and finds that Merchants will face irreparable harm if the collateralization provision in the Indemnity Agreement is not enforced through a preliminary injunction. *See also Ark. Const.*, 2019 WL 452767, at *4 (collecting cases). The Court also notes that, if collateralization provisions were *not* enforced through preliminary injunctions, they would be rendered meaningless. If prejudgment relief were not available to a surety in Merchants' position, why would a principal in Vann's position bother to comply with a collateralization obligation? If the litigation resulted in a finding that the principal was required to indemnify the surety, the principal would simply pay the judgment. And if the litigation resulted in a finding that the principal was not required to indemnify the surety, the principal would pay

nothing.  Either way, the principal would suffer no consequence as a result of its breach

of its collateralization obligation, and either way the surety would be deprived of the

pre-judgment protection for which it bargained.

For these reasons, the Court finds that the irreparable-harm factor also favors the

grant of a preliminary injunction.

### C.  Balance of Harms and Public Interest

Finally, the Court considers the last two preliminary-injunction factors: the

balance of harms and the public interest.  Vann argues that the balance of harms weighs

in its favor because Merchants is "one of the top fifteen sureties in the country" and

therefore "able to bear [the] cost [of litigating the claims]," while Vann is "a small

minority-owned business" and "forcing [it] to post $3 million in collateral would very

likely force it into bankruptcy."  Pl. Memo. at 21–22.  But Vann's concern about being

forced into bankruptcy actually underscores the risk that *Merchants* faces if Vann does

not post collateral:  Merchants may never be able to collect on Vann's ultimate

indemnity obligations if Vann's financial position is as precarious as its brief implies or

if Vann's financial position deteriorates during the course of this litigation.  *See Travelers*

*Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2017 WL 9360906, at *11 (W.D.

Tex. Aug. 2, 2017) (evidence that defendant was in a financially precarious position and

had "not posted collateral security after several demands . . . as required under the

-12-

otherwise valid and unambiguous Indemnity Agreement . . . demonstrates a presently

existing threat of irreparable harm").

As another court observed in a similar case:

> If no preliminary injunction issues here, then Merchants will
> shoulder 100% of the burden of having entered into the
> Indemnity Agreement with [Defendant] . . . . It is undisputed
> that multiple claims have been made on the bonds. . . . What
> is happening here is that [Defendant] would like to have [its]
> cake and eat it, too.  While [it] acknowledge[s] having
> promised to pay collateral to indemnify Merchants in the
> event that claims were made against the bonds, [Defendant]
> argue[s] that Merchants should bear the legal and financial
> burdens of the litigation surrounding those claims . . . .

*Ark. Constr.*,  2019 WL 452767 at *6; *see also Hanover Ins. Co. v. Holley Const. Co. & Assocs.*,

No. 4:11-CV-41 (CDL), 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012) ("Although

Defendants may suffer harm as a result of the injunction, this harm is the result of

enforcement of an Indemnity Agreement which Defendants entered; an injunction

would only require Defendants to do that which they agreed to do.").

The Court also finds that granting Merchants' motion for a preliminary

injunction will benefit the public.  "[E]nforcing the collateral security provision of an

indemnity agreement in the construction setting serves an important public interest: to

encourage sureties to continue to provide bonds for public construction contracts."

*Padron*, 2017 WL 9360906, at *13 (W.D. Tex. Aug. 2, 2017) (quoting *Sappah*, 771 F. Supp.

2d at 576); *see also Ark. Constr.*, 2019 WL 452767, at *7 ("[T]here is value in instilling

confidence in the surety industry that indemnity agreements will be enforced by the courts, and that the contracted-for right of [collateralization] will be recognized as an equitable right subject to protection through preliminary injunctive means.").

In sum, Merchants has demonstrated that all of the *Dataphase* factors weigh in its favor, and therefore the Court grants its motion for a preliminary injunction enforcing the collateralization provision of the Indemnity Agreement.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.   Plaintiff Merchants' motion for a preliminary injunction [ECF No. 8] is GRANTED to the extent consistent with this order.

2.   No later than May 5, 2023, defendants Vann Companies, LLC, and Michael Vann must provide collateral in the amount of $3,114,779.75 to plaintiff Merchants in a manner consistent with the parties' Indemnity Agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 20, 2023                             s/Patrick J. Schiltz
                                                   Patrick J. Schiltz, Chief Judge
                                                   United States District Court

-14-